UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPELLA PHOTONICS, INC., <br> Plaintiff, <br> v. <br> CIENA CORPORATION, <br> Defendant. | Case No. 20-cv-08628-EMC <br><br> **ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS** <br><br> Docket No. 22 |

Plaintiff Capella Photonics, Inc. ("Capella") has sued Defendant Ciena Corporation ("Ciena") on two counts of patent infringement related to optical switching technologies for use in optical transmission networks. Docket No. 1. Ciena moves under Rule 12(b)(6) to dismiss with prejudice all claims of infringement by products made, purchased, offered for sale, used, or imported prior to March 17, 2020, the date the United States Patent & Trademark Office ("USPTO") reissued the patents to Capella. Docket No. 22. Ciena seeks to limit Capella's damages claim in this case to the period between March 17, 2020, and the expiration date of the patents (August 23, 2021). MTD at 2.

**I.    BACKGROUND**

A.    Factual Background

Capella is a pioneer of breakthrough optical switching technologies for use in optical transmission networks. Compl. ¶ 8. Optical fiber is used by telecommunications companies to transmit telephone signals, internet communications, and television signals. *Id.* ¶ 10. Optical fiber is a fast and efficient medium for conducting data in the form of light. Various wavelengths of light travel along optical fiber at the same time, with each wavelength carrying specific data

intended for delivery to a specific location. *Id.* An optical fiber carries internet traffic, cellular communications, and digital television transmissions simultaneously by using different wavelengths of light to carry the data. *Id.*

Capella manufactures reconfigurable optical add and drop multiplexers ("ROADM") and Dense Wavelength Division Multiplexing ("DWDM") technologies. *Id.* ¶ 8. DWDM transport platforms and their ROADM modules are the backbone of advanced fiberoptic networks because they route (or switch) signals traveling along fiber optic cables in the directions they need to go. *Id.* ¶ 14. The switching occurs on the wavelength level, which means that a ROADM can separate all the wavelengths of light entering the device and direct them to go in different directions depending on the platform configuration. *Id.* In other words, certain wavelengths can be dropped from a fiber altogether and new wavelengths can be added onto fibers. *Id.* ROADMs are reconfigurable, which means that they can be adjusted to send traffic or wavelengths in different directions at different times. *Id.* ¶ 16. The development of ROADMs allowed video to be sent over the internet at the speed of light. *Id.* ¶ 15.

Capella alleges that Ciena has offered for sale, sold, and/or imported into the United States DWDM transport platforms and modules for optical networks deployed around the world, including specifically in this judicial district, that infringe the '905 and '906 patents at issue in this case, and continues to do so. *Id.* ¶ 18.

B.  Procedural History of the Patents-in-Suit

Capella is the owner of United States Patent No. 6,879,750, entitled "Reconfigurable Optical Add-Drop Multiplexers with Servo Control and Dynamic Spectral Power Management Capabilities" (the "'750 patent"). *Id.* ¶ 19. The '750 patent issued to Capella on April 12, 2005 and was reissued to Capella on May 17, 2011 as United States Patent No. RE 42,368 (the "'368 patent"). *Id.*

Capella is also the owner of United States Patent No. 6,625,346 entitled, "Reconfigurable Optical Add-Drop Multiplexers with Servo Control and Dynamic Spectral Power Management Capabilities" (the "'346 patent"). *Id.* ¶ 22. The '346 patent issued to Capella on September 23, 2003 and was reissued to Capella on November 14, 2006 as United States Patent No. RE 39,397

(the "'397 patent") and reissued again to Capella on September 6, 2011 as United States Patent No. RE 42,678 (the "'678 patent"). *Id.*

Capella sued Ciena for infringement of the '368 and '678 patents in the U.S. District Court for the Southern District of Florida, in an action titled *Capella Photonics, Inc. v. Ciena Corporation*, Case No. 1:14-cv-20530-KMM. *Id.* ¶ 28. That action was subsequently transferred to the Northern District of California and assigned Case No. 14-cv-3351 EMC, where it was related to Capella's ongoing suits against Cisco Systems, Inc., Fujitsu Network Communications, Inc., Tellabs Operations, Inc., and Coriant (USA) Inc. *Id.*

Ciena, Cisco, and other defendants filed petitions for *inter partes* review ("IPR") on the '368 and '678 patents, and the PTO initiated IPR proceedings on all of the asserted claims of both patents. These petitions were based on the prior art showing that others had already invented every aspect of Capella's claimed invention. MTD at 3-4. In the IPR proceedings on the original patents, in order to avoid invalidity, Capella sought to disavow circulator ports from the definition of ports. *See, e.g.*, Docket No. 22-7 ("Capella's Resp. to '678 IPR Pet.") at 6-7 ("[t]he '678 patent explicitly labels its ports 'collimators' and provides public notice that the present invention is using multiple fiber collimators to provide the ports. As a result, the multiple fiber collimator ports in the '678 patent can*not* be read to encompass circulator ports like those used in Bouevitch") (emphasis in original).

This Court stayed the matter pending the outcome of the IPR proceedings. On January 28, 2016 and February 17, 2016, the PTAB found unpatentable each claim identified by Capella in its Preliminary Infringement Contentions for the '368 and '678 patents. *Capella Photonics, Inc. v. Cisco Systems, Inc.*, Case No. 3:14-cv-03348-EMC, Docket No. 205 at 7. In its final written decision, the PTAB rejected Capella's contention that "port" does not encompass circulator ports. *See* IPR2015-00739, Paper 50 at 14-15 ("Patent Owner offers no definition of 'port,' and does not suggest that the '678 patent provides an express definition of the term, but instead argues that a 'port,' as claimed, is not a 'circulator port' because the '678 patent 'disavows circulator-based optical systems.' … We disagree. There is no dispute that the ordinary and customary meaning of 'port' encompasses circulator ports, and, indeed, any 'point of entry or exit of light'"). Nor did the

3

'678 patent "equate the term 'port' to 'collimator,' as both 'port' and 'collimator' appear separately in the claims of the '678 patent." *Id.* at 15.

As to the '368 patent, the PTAB cancelled claims 1-6, 9-13, and 15-22 as obvious over the prior art. As to the '678 patent, the PTAB cancelled claims 1-4, 9, 10, 13, 17, 19-23, 27, 29, 44-46, 53, and 61-65 as obvious over the prior art. The Federal Circuit affirmed the PTAB's decisions in February 2018 and the U.S. Supreme Court denied Capella's Motion for Writ of Certiorari. *Capella Photonics, Inc. v. Cisco Systems, Inc.*, Case No. 3:14-cv-03348-EMC, Docket No. 205 at 7.

On June 29, 2018, Capella filed a petition to reissue the '368 and '678 patents under 35 U.S.C. § 251. *Id.* The '368 and '678 patents were reissued as the **'905 and '906 patents** on **March 17, 2020**, after Capella narrowed the previously cancelled claims to avoid the prior art which the PTAB had flagged in cancelling the claims at issue. Compl. ¶¶ 19, 22.

C. <u>Claim Construction Order in *Cisco v. Capella*</u>

In *Cisco v. Capella*, which involved the same two patents at issue in the instant case (the '905 and '906 patents), the parties asked the Court to construe eleven terms. *Cisco Systems, Inc. v. Capella Photonics, Inc.*, Case No. 3:20-cv-01858-EMC, Docket No. 119 ("*Cisco* Claim Construction Order"). The Court first construed **disputed terms 1-5** ("port(s);" "fiber collimator port" or "fiber collimator . . . port;" "Fiber collimator(s), providing . . . port(s);" and "fiber collimator(s), providing and serving as port(s)" or "fiber collimator(s) serving as . . . port(s)) **as a group**. *Id.* at 14-15. The parties disagreed on (1) whether the term "port" in the Reissued Patents is limited to "fiber collimator port;" (2) whether a fiber collimator that is "providing" a port means that the port is necessarily a fiber collimator port; and (3) whether Capella defined the term "port" to mean "fiber collimated port," or disclaimed all ports other than fiber collimated ports. *Id.* at 15.

The Court first found that the term "port" is not limited to "fiber collimator port," reasoning that the patent prosecution history strongly suggests that Capella conceived of its invention as having fiber collimators that exist separate and apart from the input/output ports. *Id.* at 16-17. The Court also noted that the terms "port" and "fiber collimator port" are used throughout the Reissued Patents to refer to different parts of the invention, and thus held that the

4

two terms are not synonymous. *Id.* at 18-19. The specifications indicated that the input and output ports in the invention can be, but are not necessarily, fiber collimator ports. *Id.* at 20. Second, the Court found that a fiber collimator that is "providing" a port is not necessarily a fiber collimator port, holding that Capella had failed to support, with intrinsic evidence, its contention that the Reissued Patents use the term "providing" to mean "serving as." *Id.* Third, the Court held that Capella did not define the term "port" to mean "fiber collimator port," nor did it disavow the full scope of the term "port." *Id.* at 21. It noted that Capella's statements in the Original Patents' IPR proceedings constitute, at best, a disavowal of *circulator* ports, not a disavowal of *all* ports *other than* fiber collimator ports. *Id.* at 22. For Capella to disavow all ports other than fiber collimator ports, it would have had to clearly and unequivocally say as much in the specifications or during the prosecution history, and it did not do so. *Id.* at 22-23. Accordingly, the Court rejected Capella's proposed constructions of **term one** altogether and construed **terms two through five** as follows:

> • Term two (2): "port" means "point of entry or exit of light, excluding circulator ports"
>
> • Term three (3): "fiber collimator port" or "fiber collimator . . . port" means "fiber collimator port that is the point of entry or exit of light"
>
> • Term four (4): "fiber collimator, providing . . . port" means "fiber collimator that can be coupled to other components to make available a point of entry or exit of light"
>
> • Term five (5): "fiber collimator(s), providing and serving as . . . port(s)" or "fiber collimator(s) serving as . . . port(s)" means "fiber collimator port that is the point of entry or exit of light"

*Id.* at 23.

## II. LEGAL STANDARDS

A. <u>Reissue</u>

"Reissue" is a procedure for correcting errors in a patent. A patent may be reissued when the patentee's claims are too broad or too narrow in comparison to what the patentee could rightfully claim. *See* 35 U.S.C. § 251(a) ("[w]henever any patent is, through error, deemed wholly or partly inoperative or invalid, by reason of … the patentee claiming more or less than he had a

5

right to claim in the patent, the Director [of the PTO] shall … reissue the patent for the invention disclosed in the original patent").

Reissued patents have the same legal effect as the original, surrendered patents for any causes of action arising *after* reissuance. 35 U.S.C. § 252 ("every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form"). However, reissued patents can also have a legal effect on claims and causes of action which arose *before* reissuance: any claims which are carried forward in **substantially identical** form are enforceable as if they had been in effect from the issue date of the original patent. *See id.* ("in so far as the claims of the original and reissued patents are substantially identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent"). In other words, a court may assess damages for patent infringement of substantially identical claims both after and *before* the reissue, even though the patentee has "surrendered" the original claims. *Id.*

Original and reissued claims are "substantially identical" when there has been **no substantive change** between the original and reissued claims. *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1360-61 (Fed. Cir. 1991) ("the word 'identical' in [35 U.S.C.] § 252 'means, at most, 'without substantive change'" and "'[i]dentical' does not mean verbatim") (emphasis in original; quoting *Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 827-28, 221 USPQ 568, 575 (Fed. Cir. 1984)). *See also Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997) (holding that "'[i]dentical' does not mean verbatim, but means at most without substantive change," and thus, "whether amendments made to overcome rejections based on prior art are substantive depends on the nature and scope of the amendments"); *R+L Carriers, Inc. v. Qualcomm, Inc.*, 801 F.3d 1346, 1349 (Fed. Cir. 2015) ("[t]o determine whether substantive changes have been made, we consider whether the *scope* of the claims are identical, not merely whether different words are used") (emphasis in original; internal quotation marks omitted).

B.  Intervening Rights

While the first paragraph of § 252 bars pre-issuance damages when the reissue claim's scope has substantively changed, the second paragraph provides for the affirmative defense of **absolute intervening rights**. § 252 provides, in relevant part, as follows:

> "A reissued patent shall not abridge or affect the right of any person or that person's successors in business who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported *unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent*."

35 U.S.C. § 252 (emphasis added). Thus, the defense of absolute intervening rights provides "an accused infringer with the absolute right to use or sell a product that was made, used, or purchased before the grant of the reissue patent as long as this activity does not infringe a claim of the reissue patent that was in the original patent." *BIC Leisure Prods. v. Windsurfing Int'l*, 1 F.3d 1214, 1220-21 (Fed. Cir. 1993).

### III.  DISCUSSION

A.  Absolute Intervening Rights

Ciena is protected by absolute intervening rights against infringement claims for damages accruing before the reissue of the '905 and '906 patents on March 17, 2020, unless it used or sold optical switching technology that "infringes a valid claim of the reissued patent which was [also] in the original patent." 35 U.S.C. § 252. If the claims in the '905 and '906 patents are substantially changed from the claims in the original '368 and '678 patents, then Ciena has absolute intervening rights and is protected against claims for damages accruing before the date of reissuance. *Laitram*, 952 F.2d at 1360-61. Such intervening rights do not afford protection if the reissued patents are substantially identical to the original patents.

In answering the question of substantial identicality, the Court affords *stare decisis* deference to its prior construction of claim terms, for the Supreme Court has recognized "the importance of uniformity in the treatment of a given patent." *Markman v. Westview Instruments*, 517 U.S. 370, 390 (1996). *See Cisco* Claim Construction Order at 10-11 ("assuming the Federal

Circuit has not construed the terms of a patent, district courts are to give more deference (*stare decisis* deference) to prior constructions from courts inside their district than to prior constructions from courts outside their district") (citing *Visto Corp. v. Sproqit Techs., Inc.*, 445 F. Supp. 2d 1104, 1108 (N.D. Cal. 2006)). Uniformity of treatment will "promote (though it will not guarantee) intrajurisdictional certainty through the application of *stare decisis* on those questions not yet subject to interjurisdictional uniformity under the authority of the single appeals court." *Markman*, 517 U.S. at 391. *See also Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1329 (Fed. Cir. 2008) ("[g]iven 'the importance of uniformity in the treatment of a given patent,' … this court consults the claim analysis of different district courts on the identical terms in the context of the same patent") (quoting *Markman*, 517 U.S. at 390)). The prior constructions of other district courts are entitled to "'reasoned deference,' with such deference turning on the persuasiveness of the order; 'in the end, [however, the Court] will render its own independent claim construction.'" *Visto*, 445 F. Supp. 2d at 1108 (quoting *Maurice Mitchell Innovations, L.P. v. Intel Corp.*, No. 2:04-CV-450, 2006 U.S. Dist. LEXIS 41453, at *13 (E.D. Tex. June 21, 2006)).

In its claim construction order in *Cisco v. Capella*, this Court found that Capella's addition of the terms "fiber collimator" and "fiber collimated" to the term "port" represented a substantive change to the scope of the claim terms. *Cisco* Claim Construction Order at 16-23. Specifically, the Court found that the terms "port" and "fiber collimator port" are used throughout the Reissued Patents to refer to different parts of the invention, and thus are not synonymous. *Id.* at 18-19. Capella's statements during the IPR proceedings that "[t]he ports in the '368 Patent are not circulator ports" does not state that the ports have to be **fiber collimator ports**, for Capella did not clearly and unequivocally disavow all ports other than fiber collimator ports. *Id.* at 22-23.

As this Court noted in the claim construction order, the Honorable Rodney Gilstrap of the U.S. District Court for the Eastern District of Texas recently construed the '905 and '906 patents in two actions currently before him: (1) *Capella Photonics, Inc. v. Fujitsu Network Communications, Inc.*, Case No. 2:20-cv-00076 (E.D. Tex. filed March 16, 2020); and (2) *Capella Photonics, Inc. v. Infinera Corporation et al.*, Case No. 2:20-cv-00077 (E.D. Tex. filed March 17,

2020) (the "Texas Actions"). In the Texas Actions, Judge Gilstrap similarly found that the term "port" in the reissued patents is not limited to fiber collimator ports, because the original and reissued patents contemplate fiber collimators in the invention that operate separately from the output ports. *Id.* at 16-20. The Court accords reasoned deference to Judge Gilstrap's construction of the claim terms at issue, and it finds them persuasive in the substantial identicality analysis. *Visto*, 445 F. Supp. 2d at 1108.

In view of this Court's prior claim construction order in *Cisco v. Capella* and Judge Gilstrap's claim construction order in the Texas Actions, the Court finds that the addition of the terms "fiber collimator" and "fiber collimated" *did* change the scope of the reissued patents. As this Court found in *Cisco v. Capella*, Capella sought to disavow circulator ports through filings in the IPR proceedings for the original patents, adding the terms "fiber collimator" and "fiber collimated" to the claim language in the reissued '905 and '906 patents. *Cisco* Claim Construction Order at 21. The terms "fiber collimator" and "fiber collimated" substantively alter the scope of the reissued patents, and the '905 and '906 patents are not substantially identical to the '368 and '678 patents. *Cf. R+L Carriers, Inc.*, 801 F.3d at 1349 ("[t]o determine whether substantive changes have been made, we consider whether the *scope* of the claims are identical, not merely whether different words are used") (emphasis in original; internal quotation marks omitted). Accordingly, Ciena has absolute intervening rights as to the use of optical switching technologies before March 17, 2020, the date of reissue. 35 U.S.C. § 252.

Capella argues that the substantial identicality determination cannot be made until after the claim construction process and *Markman* hearing have been completed in the instant case. Opp. at 3. It contends that Ciena's Partial Motion to Dismiss seeks to "short circuit" the process by forcing the Court to decide contested claim construction issues based on a disputed record. *Id.* at 3-4. However, the Court already found, in its prior claim construction order, that the term "fiber collimator" has substantive meaning that differs from an input/output port, and that it modifies the scope of the '905 and '906 patents. *Cisco* Claim Construction Order at 16-23. The Court need not hold another claim tutorial and *Markman* hearing in order to make the determination on absolute intervening rights under § 252, because it is not plausible for Capella to allege that no substantive

9

change was made by the addition of the term "fiber collimator." The Court's findings on this matter in its prior claim construction order definitively resolve the substantial identicality analysis for purposes of Ciena's Partial Motion to Dismiss, and it will adhere to that determination.[1] To the extent Capella seeks to assert any claim that includes the word "input/output port," the Court has already held that that term encompasses more than fiber collimator ports. *Cisco* Claim Construction Order at 21-23.

In sum, Capella is barred from seeking pre-issuance damages because the reissued patents are not substantially identical to the original patents.

B. <u>Collateral Estoppel</u>

Moreover, as this Court previously held in granting Plaintiff's Motion for Judgment on the Pleadings in *Cisco v. Capella*, wherein Capella sought pre-issue damages for alleged infringement that took place prior to the reissue of the '905 and '906 patents, if the reissued patents were substantially identical to the original patents, Capella's claims for pre-issuance damages would be barred by collateral estoppel. *See Cisco Systems, Inc. v. Capella Photonics, Inc.*, Case No. 3:20-cv-01858-EMC, Order Granting Plaintiff's Motion for Judgment on the Pleadings ("Order on MJP") (Docket No. 48). The Court addressed whether "the undisputedly binding effect of a PTAB decision on the validity of the same patent should apply as well to the validity of substantially identical claims of a reissued patent." *Id.* at 9. It held that the "strong interest in … finality" suggested that a PTAB determination of invalidity should have collateral estoppel effect on a subsequent district court proceeding. *Id.* at 9-10. This Court noted the inescapability of collateral estoppel with the following hypothetical:

> "If an IPR proceeding were to be instituted against the reissued

---

[1] Other courts have found absolute intervening rights before claim construction occurred. *See, e.g.*, *Waters Techs. Corp. v. Aurora SFC Sys.*, Civil Action No. 11-708-RGA, 2017 U.S. Dist. LEXIS 132901, at *9-10 (D. Del. Aug. 21, 2017) (holding that, with respect to … 35 U.S.C. § 252, it [was] not plausible that a substantive limitation was not added to the Amended Claims" and granting the Motion to Dismiss because the district court was "not persuaded that claim construction or discovery would make a difference"); *eBay Inc. v. PartsRiver, Inc.*, No. C 10-04947 CW, 2011 U.S. Dist. LEXIS 49522, at *7-11 (N.D. Cal. May 9, 2011) (granting summary judgment as to pre-issuance damages and absolute intervening rights before formal claim construction). Here, the Court has the added benefit of its prior claim construction order and its *stare decisis* effect. *Markman*, 517 U.S. at 391.

> claims of '905 and '906 Patents, and the claims were deemed "substantially identical" to the original claims, the PTAB would be bound by collateral estoppel and, in light of its invalidation of the '368 and '678 Patent claims, would have to find the substantially identical claims of the reissued patents invalid. *See* 37 C.F.R. § 42.73(d)(3). There would be no "materially different issues that alter the question of patentability"; the validity of the two sets of patents would present "identical issues of patentability." *MaxLinear*, 880 F.3d at 1377. The PTAB's determination of invalidity of the '905 and '906 Patent claims would, in turn, be binding on this Court. *See XY*, 890 F.3d at 1294. The application of collateral estoppel is ultimately inescapable."

*Id.* at 10. Thus, the Court granted Cisco's motion for judgment on the pleadings as to pre-issuance damages, holding that:

> "if the scope of the reissue claims is substantially identical to the scope of the original claims, those claims would be invalid under principles of collateral estoppel. If the reissue claims are in fact narrower than the original claims, Capella would not be entitled to preissue damages pursuant to 35 U.S.C § 252. Under either scenario, Capella will not be entitled to pre-issue damages."

*Id.* at 11.

The Court adheres to the reasoning of its Order in *Cisco v. Capella*. If the scope of the reissue claims in the '905 and '906 patents is substantially identical to the scope of the original claims in the '368 and '678 patents, those claims are invalid under the principles of collateral estoppel. *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) ("[i]f the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies"). *See also id.* ("[o]ur precedent does not limit collateral estoppel to patent claims that are identical. Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply") (emphasis in original). The Federal Circuit's affirmance of the PTAB's written decision invalidating the relevant claims in the '368 and '678 patents has collateral estoppel effect on substantially identical claims in the '905 and '906 patents before this Court. *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) (explaining that the Federal Circuit's affirmance of a PTAB decision "collaterally estops XY from asserting the patent" in an appeal from a district court decision). That the burdens of proof differ does not negate the full and fair opportunity which Capella had to litigate the issue before the PTAB and on appeal, and it does not

prevent the application of collateral estoppel. A patentee, "having been afforded the opportunity to exhaust his remedy of appeal from a holding of invalidity, has had his 'day in court,' and a defendant should not have to continue 'defend[ing] a suit for infringement of [an] adjudged invalid patent.'" *Id.* (quoting *U.S. Ethernet Innovations, LLC v. Tex. Instruments Inc.*, 645 F. App'x 1026, 1028-30 (Fed. Cir. 2016)).

All other requirements of collateral estoppel are also met. The issue of claim scope was actually litigated before the PTAB, and the claim scope determination was essential to the PTAB's judgment. *See JDS Uniphase Corp. v. Capella Photonics, Inc.*, IPR2015-00739, Paper 50 at 14-15 (Dec. 1, 2015) (Docket No. 22, Ex. 5); *JDS Uniphase Corp. v. Capella Photonics, Inc.*, IPR2015-00731, Paper 51 at 13-16, 20 (Sept. 29, 2016) (Docket No. 22, Ex. 6).

## IV. CONCLUSION

Under no scenario is Capella entitled to pre-issuance damages. Accordingly, the Court **GRANTS** Ciena's Partial Motion to Dismiss; Capella may not seek pre-issuance damages in this case.

This order disposes of Docket No. 22.

**IT IS SO ORDERED**.

Dated: June 29, 2021

EDWARD M. CHEN
United States District Judge

12